**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

|  |  |  |
|---|---|---|
| BRENDON MURPHY, | : | |
| | : | |
| Plaintiff, | : | Civil No. 19-6425 (RBK) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |
| | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Plaintiff Brendon Murphy's appeal (Doc. 1) from the final decision of the Commissioner of Social Security ("the Commissioner") denying Plaintiff's claims for Supplemental Security Income benefits ("SSI") under the Social Security Act. For the reasons expressed herein, this case is REMANDED for further administrative proceedings consistent with this Opinion.

## I.      PROCEDURAL BACKGROUND[1]

Plaintiff filed an application for Social Security Disability Insurance Benefits ("DIB") on February 28, 2014, alleging a disability onset date of March 1, 2004. (R. 264–65.) Plaintiff's DIB application was denied on August 22, 2014, and his subsequent request for reconsideration was denied on July 28, 2015. (R. 178–84.) On August 17, 2015, Plaintiff requested a hearing on his

---

[1] Because the record is voluminous, the Court sets forth only those facts necessary for context and relevant to the issues upon appeal. The Court cites to the administrative record as "R." Background facts and medical history are set forth in a separate section below.

DIB claim before an Administrative Law Judge ("ALJ"). (R. 211–12.) Around this time, Plaintiff also filed an application for SSI, which was escalated to the hearing level. (R. 268–89.)

On October 12, 2017, ALJ Karen Shelton presided over a hearing on Plaintiff's DIB and SSI applications. (R. 44–89.) The ALJ issued an Unfavorable Decision on December 15, 2017, finding Plaintiff not disabled. (R. 36.) Plaintiff filed a Request for Review of Hearing Decision with the Appeals Council; this was denied on December 21, 2018, making the ALJ's December 15, 2017 decision the final decision of the Commissioner. (R. 1–6.) Plaintiff appeals this determination now.

## II.    LEGAL STANDARD

### A.  Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses an established five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520.

For the first four steps of the evaluation process, the claimant has the burden of establishing his disability by a preponderance of the evidence. *Zirnsak v. Colvin*, 777 F.3d 607, 611–12 (3d Cir. 2014). First, the claimant must show that he was not engaged in "substantial gainful activity" for the relevant time period.  20 C.F.R. § 404.1572. Second, the claimant must demonstrate that he has a "severe medically determinable physical and mental impairment" that lasted for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 404.1509. Third, either the claimant shows that his condition was one of the Commissioner's listed impairments, and is therefore disabled and entitled to benefits, or the analysis proceeds to step

four. 20 C.F.R. § 404.1420(a)(4)(iii). Fourth, if the condition is not equivalent to a listed impairment, the ALJ must assess the claimant's residual functional capacity ("RFC"), and the claimant must show that he cannot perform his past work. 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 404. 1520(e). If the claimant meets his burden, the burden shifts to the Commissioner for the last step. *Zirnsak*, 777 F.3d at 612. At the fifth and last step, the Commissioner must establish that other available work exists that the claimant can perform based on his RFC, age, education, and work experience. *Id.*; 20 C.F.R. § 404.1520 (a)(4)(v). If the claimant can make "an adjustment to other work," he is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v).

**B. Review of the Commissioner's Decision**

When reviewing the Commissioner's final decision, this Court is limited to determining whether the decision was supported by substantial evidence, after reviewing the administrative record as a whole. *Zirnsak*, 777 F.3d at 610 (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if the court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

When reviewing a matter of this type, the Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The Court must set aside the Commissioner's decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *See* S*chonewolf v. Callahan*, 927 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776

(3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114). A district court's review of a final determination is a "qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

## III.    FACTUAL BACKGROUND

Plaintiff was born on April 10, 1963, and was 40 years old on the alleged disability onset date of March 1, 2004. (Doc. 13 ("Pl. Br.") at 7.) He has a high school education, after which he served an apprenticeship with the plumbers and pipefitters local. (*Id*. at 7–8.) He received a certification in pipe welding and heliarc from the Welding Training and Testing Institute. (*Id*.) His last fulltime employment was in 2000, when he worked as a salesperson at Home Depot. (R. 76.) Plaintiff currently lives in a townhouse with his wife, and has not driven a car since the 1980s. (Pl. Br. at 8.)

### A.  Medical History

Plaintiff alleges a history of mental and physical ailments going back to the 1980s. His mental conditions include bi-polar disorder, depression, and affective disorder, and his physical conditions include irritable bowel syndrome, recurrent intestinal obstruction, hepatitis C, back pain, and obesity. (*Id*. at 8.) Plaintiff also has a history of opioid dependence. (*Id*.)

In the 1980s, Plaintiff underwent three bypass surgeries to treat his intestinal conditions, and underwent an additional surgery to remove his gallbladder. (R. 390.) Plaintiff alleges that he is not a candidate for further surgery, and presently takes several medications to manage his condition. (R. 51, 66–67.) He reports having an endoscopy done every couple of years. (R. 67–

68.) He complains his present symptoms include abdominal pain, diarrhea, nausea, vomiting, and back pain, among others. (Pl. Br. at 8–9.)

Plaintiff reports having episodes of aggressive nausea and vomiting between one to four times a month, and states that each episode lasts between three and seven days, during which time he cannot eat or drink without vomiting. (R. 57–59, 73–74.) Plaintiff states that he used to frequent the emergency room four or five times per year for tube-feeding due to these episodes. (*Id*.) He reports that these vomiting episodes still occur, but that he now "fight[s] it off at home," and has not visited the emergency room for such episodes since approximately 2014. (R. 60.)

Plaintiff complains of regular, severe abdominal and back pain, for which he saw a pain specialist monthly throughout the relevant period. (R. 575–725.) Treatment records from this provider, RA Pain Services, reflect that Plaintiff's pain is consistently high, but is helped by his medication. (*Id*.) As a result of medications used for Plaintiff's pain management, he developed an opioid dependence. (R. 21.)

In early 2017, Plaintiff was diagnosed by Dr. Daniel D'Auria as having hepatitis C. (R. 869, 946.) In July 2017, Plaintiff began a course of treatment for hepatitis C, which he reported made him "fatigued, sleepy, headachy" and diminished his appetite. (R. 890–91.)

As for mental conditions, Plaintiff states he was diagnosed as Bipolar as a teenager, and that his current depressive symptoms interrupt everyday social functioning. (R. 60–63.) Since 2015, he has seen a counselor once a month and a psychiatrist every three months for medication. (R. 69.) He states that he does not have any problems interacting with doctors, cashiers, or receptionists during errands or other incidental interactions. (R. 63.) He adds that he has no issue following instructions, but since he turned 50, his memory has "been going downhill." (R. 64.) He reports that, unless he has a doctor appointment, he spends his days going between the bed, couch,

and kitchen, and watching TV. He reports he is not involved in anything outside the house, such as volunteering or social organizations. (R. 68.)

### B. Medical Opinion Evidence

A number of medical opinions and treatment records are contained in the administrative record. The Court relays here only those relevant to Plaintiff's current appeal.

#### *Dr. David Addis*

Dr. David Addis, one of Plaintiff's treating physicians, first saw Plaintiff in November 1999, and the record documents Dr. Addis seeing Plaintiff numerous times after the alleged onset date of March 1, 2004. (R. 438.) Dr. Addis prepared Examination Reports in 2010, 2011 and 2012 for the State of New Jersey's Division of Family Development. (R. 483–491.) In each of these reports, he stated that Plaintiff had "recurrent intestinal obstruction" after four surgeries, that his onset date was 1981, and that Plaintiff's abdominal pain limited him to the point that he could not "do anything for more than [30 minutes] at a time." (*Id*.) On March 27, 2014, Dr. Addis supplied a statement in which he stated that Plaintiff's abdominal pain "has disabled him from work since 2004." (R. 561.) He added that Plaintiff regularly "ends up hospitalized with tubes down his nose to relieve the intestinal obstructions," which would also "greatly interfere with his ability to work." (R. 561.)

#### *Dr. Shaid Meer*

Dr. Shaid Meer is another of Plaintiff's treating physicians; he provided a statement on May 20, 2015 that was identical to Dr. Addis' March 2014 statement, which opined that Plaintiff has been disabled since 2004 and suffers from severe abdominal pain. (R. 562.)

#### *Dr. David Neidorf*

Dr. David Neidorf is another treating physician; he completed a Gastrointestinal Disorders Impairment Questionnaire ("the Questionnaire") on March 10, 2017. (R. 565–570.) In the Questionnaire, he reported first treating Plaintiff in March 2016, and found that Plaintiff had recurrent abdominal pain and bowel obstruction. (R. 565.) He listed Plaintiff's prognosis as poor, stating that Plaintiff "will suffer with chronic abdominal pain with bouts of severe pain and vomiting at times." (R. 565.) He noted Plaintiff's symptoms as loss of appetite, blood in stool, abdominal pain and cramps, fatigue, nausea, pain, weight loss at times, and vomiting. (R. 566.) He indicated that Plaintiff is incapable of even low stress jobs, that in an eight-hour day Plaintiff can sit for two hours, stand/walk for one hour, and must get up and move around every two hours. (R. 568–69.) He further indicated that Plaintiff would be absent from work more than three times a month, that he would need access to a restroom three times a day, and could suffer from vomiting episodes for several hours without prior notice. (R. 569–70.)

### Dr. Louis Fares II

Dr. Louis Fares II supplied a statement on July 24, 2017 in which he reported that he has treated Plaintiff since the 1980s. (R. 574.) He detailed the surgeries Plaintiff underwent in the 1980s, and stated that his last endoscopy revealed a delayed gastric emptying. (R. 574.) Dr. Fares opined that Plaintiff has been unable to keep gainful employment due to his symptoms, and that it is unlikely Plaintiff will ever be cured. (R. 574.)

### Dr. Daniel D'Auria

Dr. Daniel D'Auria is Plaintiff's treating gastroenterologist; he provided a Medical Source Statement on April 26, 2017 in which he relayed Plaintiff's surgical history, stated that Plaintiff's last colonoscopy was negative, that Plaintiff has no significant weight loss, and his symptoms have been chronic. (R. 573.) He opined that Plaintiff has been unable to keep a job due to his reccurent

attacks of pain, nausea, and vomiting, and added that it is unlikely to find a solution to these issues. (R. 573.) The record also contains numerous treatment notes from Dr. D'Auria regarding Plaintiff's hepatitis diagnosis and treatment, as well as his stomach issues. (*See, e.g.,* R. 869, 890, 946.)

### *RA Pain Services*

Plaintiff also regularly visited a pain specialist center, RA Pain Services, to treat his abdominal and back pain symptoms throughout the relevant period. (R. 575–725.) These records indicate that Plaintiff's pain consistently registered as an eight on a pain scale ranging from one to ten. (R. 575–725.) During examinations at RA Pain Services, treatment providers—which included Dr. Caitlin Innerfield, Dr. Beth Chekemian, and Dr. Richard Domsky—noted that Plaintiff had abdominal tenderness present with slight palpation of abdomen, as well as rigidity and guarding. (*Id*.) Numerous visits record Plaintiff as having "no changes over the last month-doing well with current regimen," or "currently stable on med regimen," but nonetheless record Plaintiff's pain as remaining at an 8/10. (*See, e.g.,* R. 578, 580, 584, 589, 603.) Treatment notes also consistently note diarrhea, nausea, and vomiting. (R. 580, 585, 600, 610, 625, 666.) At times, treatment notes indicate that Plaintiff may need repeat surgery for his GI condition. (R. 595, 599.) Treatment records also document "random attacks" of severe abdominal pain Plaintiff suffered. (R. 600.)

In February 2014, Plaintiff reported being "pleased with the medications" and stated that they are "working well." (R. 640.) In February 2017, Plaintiff stated that his prescribed "medications provide relief," but his pain was still noted at 8/10. (R. 650.) In April 2017 and June 2017, Plaintiff reported that his pain worsened "with increased activities and improved with rest and medications." (R. 674, 722.)

### C. The ALJ's Decision[2]

After holding a hearing during which Plaintiff and a Vocational Expert ("VE") gave testimony, the ALJ issued her decision. The ALJ found that Plaintiff suffered from several severe impairments, including inflammatory bowel disease, affective disorder, and opioid dependence. (R. 20.) She found that Plaintiff's back pain and hepatitis C did not constitute severe impairments, and did not cause more than minimal limitation in Plaintiff's ability to work. (R. 20–21.) The ALJ also noted Plaintiff's obesity, though determined that it was not a severe impairment. (R. 21.)

At step three, the ALJ found that Plaintiff's severe impairments did not equal the severity of any listed impairments. (R. 21.) Specifically, she found that Plaintiff's inflammatory bowel disease did not meet the criteria of Listing 5.06, as his condition did not involve documented "obstruction of the stenotic areas in the small intestine or colon with proximal dilation," or "two of the [listed conditions] within a six-month period despite prescribed treatment." (R. 21.) She also found that Plaintiff's mental impairments, alone or combined, did not equal criteria of Listing 12.04, as this would require "at least one extreme or two marked limitations," and medical examination of Plaintiff found his orientation, memory, attention, and concentration to be normal, and his ability to understand, remember, or apply information only mildly limited. (R. 22.) However, noting that Plaintiff's opioid dependence "has clearly affected his ability to concentrate, persist, and with pace," the ALJ assigned a moderate restriction to Plaintiff's concentration, persistence, and pace. (R. 22.) Again considering Plaintiff's opioid dependence, the ALJ assigned a moderate limitation to Plaintiff's ability to adapt and manage himself, noting that he could independently take care of his personal needs, but at a slower pace. (R. 22–23.)

---

[2] The ALJ found that res judicata barred Plaintiff's application for Disability Insurance Benefits, and dismissed this application. (R. 20.) Because Plaintiff does not challenge this ruling, the Court does not address it in detail here, and focuses only on the ALJ's analysis of Plaintiff's SSI application.

Next, the ALJ formulated Plaintiff's RFC, and found that he was able to:

perform a full range of light work as defined in 20 CFR 216.967(b) except he can lift and carry twenty pounds occasionally and ten pounds frequently; could stand and/or walk for six hours in an eight hour workday; is able to sit for six hours in an eight hour workday; is able to understand, remember, and carry out simple, routine, and repetitive tasks; in a work environment free of fast paced production requirements involving only simple, work-related decisions with few, if any, workplace changes; and can work for two hours before needing a break."

(R. 24.)

In crafting the RFC, the ALJ assigned certain weight to the medical opinion evidence in the record, and assessed the credibility of Plaintiff's subjective complaints. She found that the medical record did not support the severity of symptoms that Plaintiff claimed. (R. 26.) She stated that September 28, 2015 treatment records showed mild GI conditions, in contrast to Plaintiff's complaints of severe physical distress. (R. 26.) She also pointed to an October 26, 2015 record that stated Plaintiff's swallowing function was within normal limits, his "esophagus demonstrated normal peristalsis without obstruction or reflux, and visualized small bowel appeared normal." (R. 26–27.)

The ALJ assigned little credibility to Plaintiff's reported vomiting episodes; she noted there were no treatment records documenting emergency room care for these episodes. (R. 31.) Further, she stated that Dr. D'Auria's records suggest "stable weight values at obese levels," which she found "contrary to [Plaintiff's] allegations of extensive periods of being unable to hold down food." (R. 27, 32.)

The ALJ addressed Dr. D'Auria's April 26, 2017 statement. She noted that Dr. D'Auria's regular treatment records relayed normal abdomen examinations, normal active bowel sounds, and no tenderness. (R. 27.) She found Dr. D'Auria's April 26, 2017 statement to be in conflict with these normal examination findings and treatment records, as his April 2017 statement suggested

"severe symptoms with an opinion of inability to work," "no significant weight loss," and "chronic" symptoms. (R. 27–28.) Because of the inconsistency between the regular treatment records and the April 2017 statement, as well as the fact that Dr. D'Auria had only treated Plaintiff for six months prior to his April 2017 opinion, the ALJ assigned little weight to Dr. D'Auria's opinion. (R. 28.)

The ALJ discussed Dr. Neidorf's Questionnaire, and stated that she did not give significant weight to the entire opinion, because the record does not support the degree of severity Dr. Neidorf reported. (R. 29.) She stated that Dr. Neidorf's treatment records primarily documented refills of medication, rather than examination findings, yet imposed severe restriction with sitting, standing, walking, and the need for bathroom breaks, and absences. (R. 29–30.) The ALJ found nothing in the record to corroborate such limitations, and, as Dr. Neidorf did not record objective examination findings, she found that his own treatment records did not support the findings. She did give some weight to the opinion in that the record supported Dr. Neidorf's opinion that the combination of Plaintiff's impairments would restrict him to "less than a full range of light work with limitations to unskilled work." (R. 30.)

The ALJ gave little weight to the opinions of Drs. Meer and Fares. Dr. Meer's opinion was given little weight because: it was prepared before the SSI application date; there were no treatment records placed in evidence after the SSI application date; and because Dr. Meer opined on the ultimate issue of disability, which the ALJ stated is reserved to the Commissioner. (R. 33.) Dr. Fares' opinion was given little weight for similar reasons: there were no treatment records since the SSI application date; Dr. Fares did not supply clinical evidence to support his opinion that Plaintiff cannot work; and Dr. Fares improperly opined on the ultimate issue of disability. (R. 33.)

The ALJ discussed pain management records from RA Pain Services, prepared by Dr. Beth Chekemian and Dr. Caitlin Innerfield. (R. 28.) She found that Plaintiff was inconsistent in his pain management care based on notes that Plaintiff was previously discharged for failing to take his medication as prescribed, and if he failed to do so again, "he would be discharged for good." (R. 28.) Additional records from Dr. Innerfield note Plaintiff as "doing well" on his medication, and state that the medications provide pain relief. (R. 29.) Because she found that this record did not support Plaintiff's claimed symptoms, the ALJ also found Plaintiff's subjective reports of restricted lifestyle not fully credible, as the physical and medical treatment records did not "show any necessity of such a restricted lifestyle, as alleged by [Plaintiff]." (R. 32.)

Because Plaintiff was close to turning 55 years old, the ALJ also conducted a borderline age analysis. (R. 33.) She found that Plaintiff should not be placed in a higher age category because he was at "the high end of education for the Medical Vocational Rules," and because he could physically "perform a wide range of unskilled, light work." (*Id.* at 35.)

At step four, the ALJ found that Plaintiff had no past relevant work. (R. 34.) At the final step, based on the above analysis and based on the VE's testimony, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including cleaner, office clerk, and usher. (R. 35.) Accordingly, the ALJ found Plaintiff not disabled. (R. 36.)

## IV.    DISCUSSION

On appeal, Plaintiff makes the following arguments: (1) the ALJ erred by failing to find that his hepatitis C constituted a severe impairment; (2) the ALJ incorrectly determined Plaintiff's RFC by not taking into account his opioid dependence and by failing to clearly define the break time Plaintiff would need in a workday; (3) the ALJ erred in her borderline age assessment; (4)

the ALJ erred in her treatment of the medical opinion evidence; and (5) the ALJ erred in her assessment of Plaintiff's pain.[3]

**A. Whether the ALJ erred in finding that Plaintiff's hepatitis C was not a severe impairment**

At step two, the ALJ considered Plaintiff's hepatitis C and determined that it did not constitute a severe impairment. (R. 20–21.) Because Dr. D'Auria treated Plaintiff for this condition, the ALJ relied on his treatment records. Dr. D'Auria noted that Plaintiff was not aware of his hepatitis C prior to treatment for it. (R. 20-21, 946.) Dr. D'Auria began medication treatment in July 2017, and one month later, Plaintiff reported feeling tired and unwell. (R. 890.) The ALJ stated that the record did not support a finding that these limitations and symptoms would last for a period of twelve consecutive months, because Dr. D'Auria noted that they were side-effects of the medication Plaintiff was taking, and that they would dissipate after the treatment was completed in thirteen weeks. (R. 20–21.)

Plaintiff argues the ALJ's determination that his symptoms would cease after his hepatitis treatment ended was improperly speculative, as she did not know to a certainty that the negative effects would cease once he finished taking medication. (Pl. Br. at 19.) In response, Defendant argues that the ALJ's determination was clearly supported by Dr. D'Auria's treatment records. (Doc. 16 ("Def. Br.") at 11.)

The Court finds that substantial evidence supports the ALJ's determination that Plaintiff's hepatitis C was non-severe. The ALJ's decision cites to specific supporting treatment records from Dr. D'Auria. (R. 20–21.) For example, these records show that Plaintiff complained to Dr. D'Auria

---

[3] Because the Court finds remand appropriate based on the ALJ's treatment of the medical opinion evidence, and the ALJ may potentially construct a different RFC when assessing these opinions upon remand, the Court does not address Plaintiff's arguments as to time off-task or borderline age assessment.

that he was feeling irritable, "fatigued, sleepy, and headachy" and that his appetite was diminished, and Dr. D'Auria's response to Plaintiff was that 13 more weeks of medication would "get him to the point where he never needs to think about this problem again." (R. 891.) Another of Plaintiff's complaints was met with Dr. D'Auria's statement to "hang in there" because "[t]his isn't going to be forever." (R. 895.) These treatment notes, which the ALJ cited to, show Dr. D'Auria's belief that the negative symptoms Plaintiff experienced were side effects of the treatment, and would cease upon completion of the treatment. Notably, Plaintiff's brief does not point to the record at all, and only cites to a website listing the general symptoms of hepatitis C.

There is no evidence in the record contradicting Dr. D'Auria's assurances that the side effects would subside once the 13-week treatment ended; the ALJ's decision did not ignore conflicting medical evidence. Courts within the Third Circuit have held that "[t]he hepatitis C virus, without evidence of limitations, is not dispositive." *Givens v. Comm'r of Soc. Sec.*, Civ. No. 13-5900, 2014 WL 3844810, at *6 (D.N.J. Aug. 4, 2014). The ALJ's determination that symptoms could be attributed to treatment and are thus only temporary is supported by substantial evidence, and does not provide a ground for remand.

### B. Whether the ALJ erred in her assessment of Plaintiff's opioid dependence

Plaintiff next argues that the ALJ erred because, although she found his opioid dependence to be a severe impairment, she then "failed to include any limitations in the RFC due to this severe impairment." (Pl. Br. at 15–16.) Defendant argues in response that the ALJ explicitly considered Plaintiff's opioid dependence when determining his RFC, highlighting the moderate limitations the ALJ assigned to Plaintiff's concentration, persistence, and pace. (Def. Br. at 20–21.)

The Court finds Plaintiff's argument to be without merit. At step two of her analysis, the ALJ found Plaintiff's opioid dependence to constitute a severe impairment. (R. 20.) At step three,

the ALJ again noted Plaintiff's opioid dependence, stating, "[Plaintiff] has been on a regimen of pain medication resulting in opioid dependence, which has clearly affected his ability to concentrate, persist and with pace." (R. 22.) After noting this, she found that Plaintiff "has moderate restrictions in his concentration, persistence and pace, but there is no evidence of marked or extreme limitations in this functional area." (*Id.*) She added that, "considering [Plaintiff's] opioid dependence and pain symptoms, and giving [Plaintiff] the benefit of the doubt, I assign a moderate limitation in adapting and managing himself." (R. 23.)

Plaintiff's argument that the ALJ "failed to include any limitations in the RFC" due to Plaintiff's opioid dependence fails entirely to take into account the moderate limitations the ALJ assigned to Plaintiff's ability to "concentrate, persist and with pace" and to Plaintiff's ability to adapt and manage himself. (R. 22–23.) These limitations are present in the RFC: the ALJ determined that Plaintiff is "able to understand, remember, and carry out simple, routine, and repetitive tasks; in a work environment free of fact paced production requirements involving only simple, work-related decisions with few, if any, workplace changes." (R. 24.) This challenge to the RFC based on Plaintiff's opioid dependence is unsupported and accordingly fails.

### C. Whether the ALJ erred in her treatment of the medical opinion evidence

Plaintiff next argues that the ALJ improperly assigned little weight to, or completely disregarded, medical opinion evidence from a slew of doctors. (Pl. Br. at 25.) Defendant argues that the ALJ considered all relevant medical opinions and assigned appropriate weight based on the overall evidence in the record. (Def. Br. at 23.) For reasons detailed in each section below, the Court agrees with Plaintiff that the ALJ failed to fully weigh and consider all of the medical opinion evidence in the record. Accordingly, the ALJ's decision is not supported by substantial evidence, and remand is appropriate. *See Karge v. Comm'r of Soc. Sec.*, Civ. No. 17-4999, 2018

WL 6077981, at *5 (D.N.J. Nov. 21, 2018) (explaining that, when an ALJ fails "to fully identify, weigh, and consider all of the medical evidence of record, including the medical opinions of Plaintiff's treating physicians," then "the Commissioner's finding is not supported by substantial evidence, and the Court will remand for resolution") (citing *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001)).

### i. Dr. Meer

The ALJ gave little weight to the opinion of Dr. Meer, one of Plaintiff's treating physicians, because it predated the SSI application date, there were no treatment records after the SSI application date, and because the ALJ found that Dr. Meer improperly opined on the ultimate issue of disability. (R. 33.) Plaintiff argues that this rejection was improper; he notes that Dr. Meer's opinion predated the SSI application date by only three months, and it addressed the period during which he alleged disability. (Pl. Br. at 25–26.) He argues that Dr. Meer did not opine on the ultimate issue of disability, but merely stated factually that Plaintiff had been unable to hold down a job in the past due to his symptoms. (Pl. Br. at 25–27; Doc. 17 ("Pl. Reply") at 2–3.) He also argues that, by ignoring Dr. Meer's opinion, the ALJ failed to include any limitations in the RFC that addressed Plaintiff's gastrointestinal issues, despite finding his inflammatory bowel disease to be a severe impairment. (Pl. Br. at 26.)

The Court finds the ALJ's decision to give little weight to Dr. Meer's opinion was unsupported. Dr. Meer's opinion was offered only three months prior to Plaintiff's SSI application date. Although it was initially offered for Plaintiff's separate DIB application, Dr. Meer was a treating physician, and the ALJ should have considered the substance of the statement rather than rejecting it for technical reasons, i.e. the date it was completed. *See, e.g., Wetzel v. Colvin*, 2015 WL 4488347, at *11 (M.D. Pa. July 23, 2015) (explaining that "the Regulations require the ALJ

to evaluate the medical records for at least twelve months prior to an application," and "[t]here is no exception to this requirement in the Regulations for cases" such as this one "with a previously adjudicated claim within twelve months") (citing C.F.R. § 416.912(d)); *Davies v. Colvin,* 2015 WL 5829760, at *11 (M.D. Pa. Sept. 30, 2015) (explaining that "medical evidence that is not from a relevant period can still be probative of disability during the relevant period"); *Brown v. Comm'r of Soc. Sec.*, Civ. 2015 WL 5439035, at *4 (W.D. Pa. Sept. 15, 2015) ("[E]ven if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ") (quoting *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004)).

The ALJ also rejected Dr. Meer's statement because she found it to touch on the ultimate issue of disability, which is reserved to the Commissioner. However, "when a treating source issues an opinion on an issue reserved to the Commissioner, the ALJ is generally obligated to recontact the treating physician." *Neitz v. Colvin*, 2015 WL 1608725, at *8 (M.D. Pa. Apr. 10, 2015). The applicable regulation states:

> Nevertheless, our rules provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner. For treating sources, the rules also require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us.

SSR 96–5p. Thus, even if the ALJ found that Dr. Meer opined on the ultimate issue of disability, she was obligated to seek clarification. *See Ferari v. Astrue*, 2008 WL 2682507, at *6 (M.D. Pa. 2008) (holding that "SSR 96-5p emphasizes to the adjudicator the importance of making every reasonable effort to recontact such sources for clarification when . . . the bases for such opinions are not clear to us"). This ground alone is insufficient for the ALJ to reject Dr. Meer's opinion.

Finally, the ALJ's passing statement that there were no supporting treatment records dated after the SSI application date is insufficient to entirely discount the opinion, as treatment records dated after the alleged onset date but before the SSI application date are still probative of disability. *Davies v. Colvin,* 2015 WL 5829760, at *11.

### ii. Dr. Fares

An identical analysis and conclusion exists with respect to the ALJ's treatment of Dr. Fares' opinion. Again here, the ALJ assigned little weight to Dr. Louis Fares' medical opinion statement because: there were no treatment records after the SSI application date, Dr. Fares did not supply clinical evidence to support his opinion, and a finding of disability is properly reserved to the Commissioner. (R. 33.)

Dr. Fares' practice has regularly treated Plaintiff since the early 1980s. As explained above, it was improper for the ALJ to reject his opinion because it may have touched on whether Plaintiff was disabled, or because there were no treatment records dated after the SSI application date. *Neitz v. Colvin*, 2015 WL 1608725, at *8. Further, the grounds for remand are even stronger here, as Dr. Fares' medical opinion was dated July 24, 2017, and thus was prepared within the relevant period after Plaintiff filed his SSI application. (R. 33.)

### iii. Dr. D'Auria

The ALJ gave little weight to Dr. D'Auria's April 26, 2017 medical source statement because she found it to be inconsistent with treatment notes and the rest of the record. Plaintiff argues that Dr. D'Auria's opinion and notes are not in conflict, as both document his pain, nausea, and vomiting. (Pl. Br. at 28–29.) Plaintiff also argues that Dr. D'Auria's medical source statement is wholly consistent with the opinions of Drs. Meer and Fares, but claims that the ALJ failed to consider these consistencies because of her inappropriate rejection of these other opinions.

The Court finds that the ALJ failed to address conflicting evidence in the record when she assigned little weight to Dr. D'Auria's opinion. She stated that Dr. D'Auria's examination findings were "rather mild," and thus did not support his ultimate opinion that Plaintiff has "recurrent attacks of pain, nausea, and vomiting" that has made it "nearly impossible [for Plaintiff] to keep a job." (R. 28.) To illustrate the perceived inconsistency between Dr. D'Auria's opinion and treatment records, the ALJ explains that Plaintiff cannot have had serious, recurrent vomiting episodes because such episodes would have resulted in weight fluctuations, which the record does not show. (R. 32.) However, this judgment fails to square Dr. D'Auria's opinion with the record. For example, an October 26, 2015 radiology report found "unexplained weight loss of 40 – 50 pounds (R. 927); Dr. Neidorf's March 10, 2017 opinion—prepared within roughly one month of Dr. D'Auria's opinion—reported "weight loss at times," (R. 566); and Dr. D'Auria's April 26, 2017 examination lists Plaintiff's weight at 268 pounds, but less than two months later, a June 21, 2017 record (R. 723) from RA Pain Services lists Plaintiff's weight at 240 pounds – a drastic fluctuation.

The ALJ does not identify or explain reasons for rejecting any of this evidence, all of which supports Dr. D'Auria's finding that Plaintiff has recurrent vomiting and contradicts the ALJ's determination that Plaintiff does not undergo any weight fluctuations. An ALJ "may weigh the credibility of the evidence," however, if there is conflicting evidence in the record, she must address it. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (finding remand appropriate where the ALJ "failed to mention or refute some of the contradictory medical evidence before him"). The ALJ here did not address or refute the contradictory medical evidence in the record, and as such, the weight she assigned to Dr. D'Auria's opinion is unsupported.

### iv.    Dr. Neidorf

The ALJ did not give significant weight to the March 10, 2017 Questionnaire Dr. Neidorf completed, discounting his findings that Plaintiff would need numerous bathroom breaks at work and would be absent several times per month. (R. 29.) The ALJ's rationale was that these findings were unsupported by the treatment records and objective medical evidence. (R. 29–30.)

Plaintiff argues that the ALJ's determination was improper, arguing that no evidence in the record contradicts Dr. Neidorf's report. (Pl. Br. at 29.) Plaintiff claims that, had the ALJ assigned greater weight to Dr. Neidorf's opinion, she would necessarily find Plaintiff disabled because his frequent bathroom breaks would result in too much time off-task, and his monthly absences would preclude him from working a full-time job. (Pl. Br. at 30.)

The same record evidence regarding weight fluctuations is also significant here, as it supports Dr. Neidorf's finding that Plaintiff's vomiting episodes would cause him to miss work. The ALJ again failed to address this conflicting record evidence. And again here, Dr. Neidorf's opinion is consistent with the reports from Drs. Meer, Fares, and D'Auria in documenting symptoms such as pain and vomiting. On remand, the ALJ must address this conflicting evidence in the record. *See Burnett*, 220 F.3d at 121.

### v.      Dr. Addis

Plaintiff states that the ALJ's decision was entirely devoid of any mention of Dr. Addis or the medical opinions he authored since Plaintiff's alleged onset date. (Pl. Br. at 31.) Plaintiff argues that the ALJ had a duty to address Dr. Addis' opinion, whether she agreed with it or not, and was not permitted to simply ignore it. (Pl. Br. at 31.) Defendant argues that discussion of Dr. Addis was unnecessary, since he did not provide any medical opinions after the SSI application date. (Def. Br. at 29.)

"The Third Circuit has held that access to the Commissioner's reasoning is [ ] essential to a meaningful court review." *Sanford v. Comm'r of Soc. Sec.*, Civ. No. 13-0366, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). As explained earlier, ALJs are not free to entirely discount—or in this case, completely ignore—medical evidence simply because it predates the SSI application date. *Davies v. Colvin,* 2015 WL 5829760, at *11.

Dr. Addis' opinion was prepared on March 27, 2014; although prior to the filing date in 2015, this was nonetheless a recent opinion, and one that plainly addressed the time period between the alleged onset date and the ALJ's decision. Defendant's argument that this opinion was outdated relies on several cases that hold that an ALJ may disregard opinion evidence offered before the alleged *disability onset date*. (Def. Br. at 29.) Though prepared before the SSI application date, Dr. Addis' opinions were clearly offered after the alleged disability onset date, making Defendant's arguments inapposite. Defendant's post-hoc rationale for rejecting Dr. Addis' opinion does not relieve the ALJ of her duty to explain why she is rejecting certain medical evidence in the decision itself. *See Gross v. Comm'r, Soc. Sec. Admin.*, Civ. No. 17-5413, 2018 WL 6705677, at *4 (D.N.J. Dec. 20, 2018) (finding remand appropriate when "[n]othing in the ALJ's decision suggests that the ALJ considered" a certain medical opinion and explaining that, "[i]f the ALJ did consider such evidence and rejected it, she must say so and articulate a reason").

Particularly considering that Dr. Addis has treated Plaintiff since 1999, and thus has a lengthy relationship as a treating physician, the ALJ should have addressed Dr. Addis' opinion or treatment notes at some point in her decision. Further, Dr. Addis' opinion is consistent with the aforementioned doctors' opinions, potentially increasing its value and need for the ALJ to address it. As such, the ALJ's treatment of Dr. Addis' opinion also warrants remand.

### D. Whether the ALJ erred in her assessment of Plaintiff's pain

Finally, Plaintiff argues that the ALJ erred by failing to properly assess Plaintiff's pain, and the effects it would have on his ability to work. (Pl. Br. at 7.)

"The ALJ, as the finder of fact, is given great discretion in making credibility findings." *McElroy v. Comm'r of Soc. Sec.*, 2015 WL 8784604, at *9 (W.D. Pa. Dec. 15, 2015) (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983). "Although allegations of pain and other subjective symptoms must be consistent with objective medical evidence, the ALJ must still explain why [she] is rejecting the testimony." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000). Additionally, "[w]here an applicant for disability benefits complains of pain, that testimony may not be discredited on the basis of the ALJ's own medical judgment; it must be discredited by contradictory medical evidence." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 481 (3d Cir. 2007).

Here, the ALJ discounted Plaintiff's subjective reports of pain after noting that treatment records from RA Pain Services stated he was "doing well on his current regimen of pain medication and that his medications provide relief." (R. 31.) However, this snapshot of the record fails to take into account that RA Pain Services also consistently reported Plaintiff's pain to be at an 8 on a 10-point scale, and it ignores the multiple occasions where Plaintiff's pain worsened and the points at which Plaintiff described his pain as never-ending. (R. 674, 669, 722.) On remand, the ALJ must address conflicting evidence rather than selectively pull from the record. *See Borrelli v. Comm'r of Soc. Sec.*, Civ. No. 18-13657, 2019 WL 4727925, at *5 (D.N.J. Sept. 27, 2019) (remanding where an ALJ discounted a plaintiff's subjective reports of pain based on a doctor's note stating the condition was "controlled," and failed to address the evidence in the record supporting the plaintiff's reports).

## V.     CONCLUSION

For the foregoing reasons, this case is REMANDED for further administrative proceedings consistent with this Opinion. *See Burnett*, 220 F.3d at 126 (instructing that, in determining the plaintiff's residual functional capacity on remand, "the ALJ must make specific findings as to all of the pertinent medical evidence, reconciling conflicts and, if rejecting particular evidence, explaining why"). An accompanying Order shall issue.


Dated:         3/26/2020                                    /s Robert B. Kugler
                                                            ROBERT B. KUGLER
                                                            United States District Judge